NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff<br><br>v.<br><br>SIDDIQ HOOPER,<br><br>        Defendant. | Criminal Action No. 20-579 (CCC)<br><br>**OPINION** |

**CECCHI**, District Judge.

Presently before the Court is Siddiq Hooper's ("Hooper") motion to suppress evidence allegedly obtained in violation of his constitutional rights, to compel the Government to produce evidence under the Government's disclosure requirements, and for leave to file additional pre-trial motions. ECF No. 23. The Government filed a brief in opposition (ECF No. 24) and Hooper filed a reply letter brief (ECF No. 26). The Court has considered all of the papers and exhibits before it. For the reasons expressed below, Hooper's motion is denied with respect to his request to suppress evidence and his request for early disclosure of materials. The motion is granted only to the extent Hooper seeks leave, if necessary, to file additional pre-trial motions.

### I.    BACKGROUND[1]

On January 30, 2019, at or about 10:40 PM, Detectives Christopher Serrano ("Serrano") and Michael Dasilva ("Dasilva" together with Serrano, "Detectives") of the Newark Police Department were conducting "pro-active" enforcement in the area of 75 Chelsea Avenue. ECF

---

[1] The following factual recitation is taken from the Newark Police Department's investigative report of Hooper's arrest and Hooper's recount of the arrest. ECF No. 23 at 17–20; id. at 1–3.

1

No. 23 at 1–2; ECF No. 24 at 1–2.  The "pro-active" enforcement was premised on an influx of recent gun violence and open-air narcotics activity in the area. ECF No. 23 at 1–2; ECF No. 24 at 1–2.  The Detectives wore plain clothes and drove unmarked and unconventional vehicles, a white Cadillac Escalade and a black Ford Expedition.  ECF No. 23 at 1–2, 5; ECF No. 24 at 1–2.

The Detectives traveled North on Chelsea Avenue and observed two individuals, one later identified as Hooper, standing in front of 79 Chelsea Avenue. ECF No. 23 at 2; ECF No. 24 at 1. 79 Chelsea Avenue is and was known to the Detectives as a vacant structure used to store narcotics. ECF No. 24 at 1.  Serrano focused his attention on Hooper who was wearing a green sweat suit and a dark brown jacket, holding an unknown object within his waistband with his right hand, and scanning incoming traffic to locate incoming police vehicles. ECF No. 23 at 2; ECF No. 24 at 1. As the Detectives approached Hooper in the unmarked vehicle, they observed Hooper frantically looking around. ECF No. 23 at 2; ECF No. 24 at 1.  Hooper became startled, his eyes widened, and he frantically turned his head North and South in an attempt to look for a path to flee. ECF No. 23 at 2; ECF No. 24 at 2.

The Detectives then observed Hooper walk down the driveway of 79 Chelsea Avenue while maintaining support on his waistband and its contents. ECF No. 23 at 2; ECF No. 24 at 2.  One of the Detectives, driving the white Cadillac Escalade with dark-tinted windows, followed by the black Ford Expedition with similar windows, stopped near Hooper; slightly rolled down his driver's side window and yelled "[h]ey f*cker come here."[2]  Id.  Hooper then began to run away from the vehicles out of fear, which he claims was due to a prior experience as a victim of a shooting. Id.  The Detectives, based on their training and experience, recognized Hooper's actions

---

[2] The Government contests the alleged use of this language by the detectives. ECF No. 24 at 6.

of holding his waistband while walking at an accelerated pace as an attempt to conceal evidence of a crime. ECF No. 23 at 2; ECF No. 24 at 2. The Detectives then exited their vehicle, approached Hooper, and Serrano stated "Newark Police, stop!" ECF No. 23 at 2; ECF No. 24 at 2. Hooper did not stop pursuant to Serrano's command and instead, Hooper ran away and scaled a fence in the rear yard of 75 Chelsea Avenue. ECF No. 23 at 2; ECF No. 24 at 2.

After Hooper scaled the fence, he fell and tumbled onto a large amount of debris located on a steep bank on the opposite side of the fence. ECF No. 23 at 2. Serrano—who had chased after Hooper on foot—observed Hooper remove and drop an object in front of 80 Cedar Avenue. Id. at 2–3. As Hooper discarded the object, Serrano heard metal hit the concrete ground. ECF No. 24 at 2. Serrano recognized the object as a black firearm. ECF No. 23 at 3; ECF No. 24 at 2. The Detectives detained and arrested Hooper and returned to the area where the black firearm was discarded. ECF No. 24 at 2. The black firearm was secured and noted to be a .40 caliber Glock 23, bearing serial number VCT963, loaded with twelve rounds of hollow point ammunition (the "Weapon"). Id.

## II.   PROCEDURAL HISTORY

From the facts above, Hooper was charged by the Newark Police Department with unlawful possession of a firearm, possession of hollow point ammunition, possession of a large capacity magazine, and obstructing and resisting arrest. Id. On February 21, 2020, the Hon. James B. Clark, III, U.S.M.J., authorized a criminal complaint and arrest warrant for Hooper related to the firearm and ammunition charges. Id. On March 9, 2020, Hooper made his initial appearance in the United States District Court for the District of New Jersey pursuant to the criminal complaint. ECF No. 23 at 1. On July 10, 2020, a federal grand jury returned an indictment, charging Hooper with one count of being a previously convicted felon in possession of a firearm

3

and ammunition, in violation of 18 U.S.C. § 922(g)(1). Id. On July 17, 2020, Hooper was arraigned and entered a plea of not guilty to the one-count indictment. ECF No. 23 at 1.

### III. MOTION TO SUPPRESS

Hooper argues that the Court should suppress the Weapon and ammunition recovered from the Vehicle because the Detectives conducted a *Terry* stop on Hooper without sufficient reasonable suspicion. ECF No. 23 at 6–7. Hooper first argues that being startled, exhibiting nervousness, engaging in erratic and evasive behavior and being in a high crime area late at night, alone, are not sufficient reasons to satisfy reasonable suspicion required for a *Terry* stop, citing to *United States v. Alvin*, 701 Fed. App'x 151, 155 (3d Cir. 2017) for support. ECF No. 23 at 6–7. In his reply, Hooper also asserts, in comparison to *United States v. Sears*, 19-224 (D.N.J. 2019), that motioning towards a waistband while in a high crime area and walking away from police, alone, is insufficient to create reasonable suspicion. ECF No. 26 at 6–7. Second, Hooper argues that when he was approached by the Detectives he was effectively seized as he paused for several moments, prior to running, after Serrano yelled "NEWARK POLICE, STOP!" indicating a submission to the show of authority. ECF No. 26 at 3. Third, Hooper argues that the evidence of the firearm and ammunition should be suppressed as fruit of an unlawful search. ECF No. 23 at 7.

The Government argues in opposition that suppression of the firearm and ammunition is unwarranted. ECF No. 24 at 3. First, the Government argues that Hooper did not demonstrate and cannot demonstrate that he yielded to the Detectives' show of authority. Id. at 3. Second, the Government argues that even if a seizure did occur it was proper under the totality of the circumstances because Hooper was in a high-crime neighborhood, it was late at night, he was standing in front of a vacant structure known to be a storage place for illegal narcotics, he was behaving nervously, he was concealing an object within his waistband, and he fled from the

Detectives after they identified themselves. Id. at 4. Third, the Government argues that because Hooper discarded and abandoned the firearm and ammunition, removing any reasonable expectation of privacy, there can be no seizure of the firearm and ammunition. Id. at 7.

The Court finds that: (1) the Detectives had reasonable suspicion to approach Hooper, and thus suppression of the Weapon is not warranted; (2) Hooper did not submit to the Detectives' show of authority, and thus he was not seized; and (3) even if the Detectives did not have reasonable suspicion to approach Hooper, he abandoned the Weapon and thus forfeited any reasonable expectation of privacy in the weapon.[3] These findings are explained in-depth below.

1. Legal Standard

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  To prevail on a motion to suppress, a defendant generally bears the burden of proving the challenged search or seizure was unreasonable under the Fourth Amendment. *See United States v. Acosta*, 965 F.2d 1248, 1257 n.5 (3d Cir. 1992) ("The proponent of a motion to suppress has the burden of establishing that his Fourth Amendment rights were violated.").  However, once the defendant has established a basis for his motion, *i.e.*, that the search or seizure was conducted without a warrant, the burden shifts to the government to show that the search or seizure was reasonable. *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995).  The

---

[3] To the extent that Hooper argues that an evidentiary hearing is required to decide his motion to suppress (ECF No. 23 at 13; ECF No. 26 at 1), the Court disagrees.  On a motion to suppress, a district court need only hold an evidentiary hearing if court determines there is a factual dispute and the "disputed fact makes a difference in the outcome." *United States v. Persinger*, 284 F. App'x 885, 887 (3d Cir. 2008) (internal citation and quotation marks omitted).  Here, there is no material disputed fact that would change this Court's decision given that Hooper fails to contest that he fled from the Detectives and abandoned the Weapon.

Government must demonstrate by a preponderance of the evidence that the challenged evidence is admissible. *See United States v. Matlock*, 415 U.S. 164, 178 n.14 (1974).

2. <u>The Detectives Lawfully Stopped Hooper</u>

The Court finds that under the totality of the circumstances reasonable suspicion existed for the Detectives to have stopped Hooper. We begin by examining whether the Detectives' initial encounter with Hooper violated Hooper's rights.

An exception to the warrant requirement is the *Terry* stop. *Terry v. Ohio*, 392 U.S. 1, 27 (1968). In *Terry v. Ohio*, the Supreme Court held that when an officer has a reasonable suspicion supported by articulable facts that criminal activity is afoot, the officer is entitled to a brief investigatory stop even without probable cause. *Id.* at 30–31. Reasonable suspicion to justify a *Terry* stop must be based on more than a mere hunch, but less than probable cause. *Id.* at 27. Although the concept of reasonable suspicion is "elusive," it demands that the officer making the stop "have a particularized and objective basis for suspecting the particular person stopped for criminal activity." *United States v. Brown*, 448 F.3d 239, 246 (3d Cir. 2006) (citing *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)). Reasonable suspicion cannot retroactively justify an officer stopping an individual, it must be determined from the officer's knowledge prior to the stop. *United States v. Goodrich*, 450 F.3d 552, 559 (3d Cir. 2006) (citations omitted).

To evaluate whether there was a particularized and objective basis for the reasonable suspicion that led to a *Terry* stop, courts consider the totality of the circumstances. *United States v. Arvizu*, 534 U.S. 266, 272 (2002). In considering the totality of the circumstances, a court may take into account circumstances from which officers drew on their own experiences and specialized training to make inferences and deductions from all the information available that may elude a layperson. *Id.* The Supreme Court has recognized that reasonable suspicion can be based

on one or more of the following factors: specialized knowledge and investigative inferences, personal observation of suspicious behavior, and information from sources that prove to be reliable. *United States v. Nelson*, 284 F.3d 472 (3d Cir. 2002) (internal citation omitted). To reach its ultimate determination, the court is not to look at the items "in isolation from each other," but rather as part of the "totality of the circumstances." *Brown*, 448 F.3d at 247 (citing *Arvizu*, 534 U.S. at 274). "[A] determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior." *Illinois v. Wardlow*, 528 U.S. 119, 124–25 (2000).

Hooper asserts that by itself, nervous, evasive behavior in a high-crime area is not sufficient to find reasonable suspicion, citing to *United States v. Alvin*, 701 F. App'x 151, 155 (3d Cir. 2017). ECF No. 23 at 6. Notwithstanding the Third Circuit's holding in *Alvin* regarding nervous behavior, the Detectives in this matter did not stop Hooper only on that basis. Instead, the Detectives had reasonable suspicion to stop Hooper based on all of the circumstances surrounding the challenged interaction (high-crime neighborhood, late at night, standing in front of a vacant structure known to be a storage place for illegal narcotics, behaving nervously and concealing an object within his waistband, and fleeing from the Detectives after they had identified themselves). The totality of the circumstances present here provide more than adequate support for the Detectives to have reasonable suspicion to stop Hooper.

Hooper's reliance on *Illinois v. Wardlow*, 528 U.S. at 124, is also unavailing. In *Wardlow*, the Supreme Court found reasonable suspicion existed where police observed the defendant standing outside in an area known for heavy narcotics trafficking and he fled at the sight of uniformed officers. *Id.* at 121–22. The Supreme Court found that defendant's location and his evasive behavior both supported a finding of reasonable suspicion by law enforcement. *Id.* at 124.

Here, it is essentially undisputed that 75 Chelsea Avenue is in a high-crime area. The Detectives were in plain clothes and using unmarked vehicles, making it hard to see how they could have provoked Hooper's flight. Further, even if the Detectives used the alleged profanity towards Hooper, his flight was still unprovoked as he had no reason to believe the Detectives were law enforcement officers. Moreover, if Hooper was truly attempting to flee due to his prior personal experience as a victim of gun violence, there is no reason he would abandon his firearm which would be of greater use to him in his possession if attempting to protect himself. Accordingly, based upon the totality of the circumstances here, which are similar to the circumstances at issue in *Wardlow*, the Detectives had reasonable suspicion to seize Hooper.

Hooper next asserts that an individual walking away from law enforcement, in a high-crime area, outside of a housing project, and motioning to his waistband is insufficient for a finding of reasonable suspicion, citing to *United States v. Sears*, No. 19-224 (D.N.J. 2019). ECF No. 26 at 6. In *Sears,* one of the detectives testified that "upon seeing the detectives' vehicle, [the defendant] stopped, turned around, allegedly 'made a quick adjustment towards his waistband and continued walking towards the building,' and looked back over his shoulder." *Id*. at *2. The detectives testified that the defendant looked immediately startled after noticing the detectives observing him adjust his waistband, but surveillance video discredited this testimony. *Id.* The same video showed the Defendant lit and smoked a cigarette the same time that the detectives allegedly saw him adjust his waistband. *Id.*

Again, Hooper makes an unpersuasive comparison because this case is factually distinct from *Sears*, where, (1) the detectives' testimony was discredited by surveillance video evidence; (2) the detectives only testified that the Defendant made a quick adjustment to his waistband; and

8

(3) the detectives had a somewhat obstructed view of the Defendant. As with Hooper's other cited cases, individually and collectively, *Sears* fails to support a basis for his motion.

The Government outlined the totality of the circumstances relevant to a determination of reasonable suspicion in the instant case and the Court finds these factors adequate to support reasonable suspicion. ECF No. 24 at 6–7. The circumstances, in totality, show that Hooper: (1) was in a high-crime neighborhood; (2) was there at night; (3) stood directly in front of a vacant structure known to be used for narcotics storage; (4) acted nervously and became startled due to police presence; (5) stored something in his waistband, consistent with a firearm, continuously adjusting it; and (6) fled from the officers. *Id.* These circumstances, when considered as a whole, provided an adequate basis for the detectives to stop Hooper. *See United States v. Parker*, 142 F. App'x 19 (3d Cir. 2005) (finding facts "plainly gave rise to a reasonable suspicion sufficient for an investigative stop" where defendant was in a neighborhood "plagued by drug activity" and defendant "adjusted his waistband . . . consistent with the possession of a firearm"). Hooper's challenge based on a lack of reasonable suspicion therefore fails.

3. Hooper did Not Submit to the Detectives' Verbal Show of Authority

Even if the Court did not find reasonable suspicion existed here, the Court additionally finds that no seizure occurred because Hooper did not yield to the Detectives after their show of authority. "A seizure occurs when there is either (a) 'a laying on of hands or application of physical force to restrain movement, even when ultimately unsuccessful,' or (b) submission to 'a show of authority.'" *United States v. Brown*, 448 F.3d 239, 245 (3d Cir. 2006) (quoting *California v. Hodari D.*, 499 U.S. 621, 626 (1991)). There is a show of authority when "taking into account all of the circumstances surrounding the encounter, the police conduct would . . . 'communicate to a reasonable person that he was not at liberty to ignore the police presence and go about his

9

business.'" *Johnson v. Campbell*, 332 F.3d 199, 205 (3d Cir. 2003) (quoting *Kaupp v. Texas*, 538 U.S. 626, 629 (2003)). A determination as to whether a person submitted to the officer's show of authority "depends on both the nature of the show of authority and the suspect's conduct at the time the officer asserted his authority." *United States v. Lowe*, 791 F.3d 424, 430–31 (3d Cir. 2015). "When a suspect flees after a show of authority, the moment of submission is often quite clear: it is when the fleeing suspect stops, whether voluntarily or as a result of the application of physical force." *Id.* at 431 (citing *Hodari D.*, 499 U.S. at 628–29).

Hooper argues that he yielded to the Detectives' show of authority for several moments until the Detectives exited their vehicles and attempted to apprehend him. ECF No. 26 at 3. Hooper states in his reply that "[u]pon stopping their vehicles, the officers immediately yelled at Mr. Hooper to stop." ECF No. 26 at 3. While the Third Circuit has held that a defendant can be seized by a show of authority despite subsequent flight, it has also made clear that a momentary yield is insufficient to constitute a seizure. *Valentine*, 232 F.3d at 359 (citing *United States v. Coggins*, 986 F.2d 651, 653–54 (3d Cir. 1993)). In *Valentine*, the Third Circuit established at what point yielding to authority and then subsequently fleeing constituted a seizure. *See generally* 232 F.3d at 350. In that case, the defendant was ordered by a police officer to walk towards him and "place his hands on the [police] car, he momentarily 'complied' with the order, stopped, and gave his name." *Id.* at 359. The Court held that this did not constitute a seizure as "[e]ven if Valentine paused for a few moments and gave his name, he did not submit in any realistic sense to the officers' show of authority, and therefore there was no seizure until Officer Woodard grabbed him." *Id.*

Here, just as in *Valentine*, Hooper failed to completely yield to the Detectives upon exiting their vehicle. This is fatal to Hooper's argument, and the Court finds that Hooper was not seized by a show of authority.

    4.  <u>Even if Hooper was Seized, the Weapon was Abandoned</u>

Regardless of whether Hooper was seized prior to taking flight, he abandoned the Weapon at issue in this case and thus cannot seek suppression. *See United States v. Sinkler*, 91 Fed. App'x 226, 232 n.8 (3d Cir. 2004). A warrantless search of property is permissible under the Fourth Amendment where the owner has abandoned his reasonable expectation of privacy in that property. *United States v. Fulani*, 368 F.3d 351, 354 (3d Cir. 2004) (citing *Abel v. United States*, 362 U.S. 217 (1960)). This determination must be made from an objective viewpoint, and proof of intent to abandon must be established by clear and unequivocal evidence. *Id.* Courts look at the totality of the facts and circumstances in making such a determination. *Id.* Not everything that is situated beyond the defendant's person and the area he occupies or owns is automatically deemed abandoned. *Sinkler*, 91 Fed. App'x at 232 n.8 (comparing the probability that a backpack was abandoned versus the impact of a collision causing a backpack to fly from a vehicle).

The Government argues that because the Weapon was thrown from Hooper's person of his own volition, Hooper lost any reasonable expectation of privacy in the property. ECF No. 24 at 7–8. The Government further argues that "[b]y discarding the firearm, Hooper tried to distance himself from criminal activity and thereby abandoned any reasonable expectation of privacy he would otherwise have had in that item." *Id.* at 7. Hooper did not respond to the Government's argument that he abandoned the firearm. *Compare* ECF No. 24 at 7–8, *with*, ECF No. 26

The Court finds the Government's argument persuasive in light of the facts presented. The undisputed facts provide that Hooper removed the object from his person and dropped it. As

such, even if there was a seizure of Hooper's person in this case, Hooper's abandonment of the Weapon means that suppression is unwarranted.

## IV.    MOTION TO PRODUCE

Hooper also made several requests for production, such as requests that the Government: (1) produce any exculpatory evidence under *Brady* and its progeny; (2) identify any evidence of other crimes, wrongs, or acts committed by Hooper that the Government intends to present at trial under Federal Rule of Evidence 404(b); (3) disclose expert reports, expert qualifications, and summaries of expert testimony; and (4) produce material under the Jencks Act (18 U.S.C. § 3500) in advance of trial along with the rough notes of the law enforcement personnel involved. ECF No. 23 at 7–12.  Hooper also seeks a hearing on the admissibility and use of his prior convictions pursuant to Federal Rule of Evidence 609. Id. at 12.  The majority of these requests are either moot or premature.  The Government represents that it is well aware of its various disclosure and preservation obligations, and further represents that it has and will promptly abide by these various requirements as they become due. ECF No. 24 at 9–12 (noting that the Government is aware of, and will abide by, its obligations with respect *Brady*, *Giglio*, the Jencks Act, expert disclosures, and Rule 404(b) evidence).  The Government further does not oppose Hooper's request for a hearing on his prior convictions under Rule 609 a week prior to trial, to the extent one becomes necessary. ECF No. 24 at 11–12.  Hooper does not contend that the Government has failed to abide by its various disclosure or preservation obligations.  Hooper's motion is thus denied as moot at this time.  Hooper may renew these motions to the extent he contends in the future that the Government has failed to abide by its discovery and disclosure obligations.

Finally, Hooper seeks leave to file additional motions as they become appropriate. ECF No. 23.  The Government does not oppose this request to the extent the motions are based on

information unknown prior to the previous pre-trial motion deadline. ECF No. 24 at 12. The Court will consider the propriety of any additional motions as they are filed, and Hooper is granted leave to file additional motions as needed.

## V. CONCLUSION

For the aforementioned reasons, the Court hereby denies Hooper's motion to the extent he seeks to suppress evidence and compel early production of materials by the Government. Hooper's motion is granted only to the extent he seeks leave to file additional pre-trial motions. An appropriate Order follows this Opinion.

**DATE**: June 7, 2021.

s/Claire C. Cecchi
**CLAIRE C. CECCHI, U.S.D.J.**
